UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 05-451(DSD/JJG)

Adam Moore,

      Plaintiff,

v.                                                  **ORDER**

Kurt Indehar in his
individual capacity,

      Defendant.


    David L. Shulman, Esq., 1005 Franklin Avenue West, Suite 3, Minneapolis, MN 55405, counsel for plaintiff.

    C. Lynne Fundingsland, Assistant Minneapolis City Attorney, 333 South Seventh Street, Suite 300, Minneapolis, MN 55402, counsel for defendant.


This matter is before the court upon defendant's motion for summary judgment. Based upon a review of the file, record and proceedings herein, and for the reasons stated, the court grants defendant's motion.

**BACKGROUND**

On March 23, 2003, defendant Minneapolis Police Officer Kurt Indehar heard gunfire while driving with his partner, Officer Peter Hafstad.[1]  The officers, already driving in the direction of the

---

[1] Plaintiff originally named Minneapolis Police Officers Peter Hafstad and Bruce Folkens as defendants. Pursuant to the
(continued...)

gunfire, turned a corner and saw an individual shoot in the direction of their squad car. Indehar ultimately returned fire and shot plaintiff Adam Moore in the arm. Moore brings this action, pursuant to 42 U.S.C. § 1983,[2] alleging that Indehar deprived him of his Fourth Amendment right to be free from excessive force.

On the evening of March 23, Moore, Rufus Cornelius Loyd and several others were standing in a parking lot when an unidentified individual in a passing vehicle shot at them multiple times out of a car window. Moore claims that he was not armed and that when he heard gunfire he turned to run but fell to the ground. He then got up and walked to the street to see which direction the vehicle went. Moore does not know where Loyd came from but testified that Loyd appeared next to him in the street and returned fire at the passing vehicle. (Moore Dep. at 21-22.) According to Moore, he and Loyd returned to the parking lot, where they were standing when Hafstad and Indehar turned into the parking lot. (Id. at 14-15.)

---

[1](...continued)
parties' stipulation, plaintiff filed an amended complaint naming Indehar and Folkens as defendants. Plaintiff has since voluntarily dropped all claims against Folkens as well as his false imprisonment, false arrest and race discrimination claims against Indehar.

[2] The statute provides that "[e]very person who, under color of [law], subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law ...." 42 U.S.C. § 1983.

Hafstad and Indehar were driving towards an intersection when they heard the gunfire. They turned right and saw Loyd and Moore standing in the right-hand lane of the street, Moore near the sidewalk and Loyd farther into the street. (Hafstad Dep. at 22-23; Indehar Dep. at 26-27.) Loyd was pointing a handgun in the direction of the squad car. (Indehar Dep. at 28-29.) Loyd fired his weapon several times in the officers' direction, and they believed Loyd to be firing at them. (Indehar Dep. at 29-30; Hafstad Dep. at 23-24.) Loyd and Moore ran into the parking lot, Moore approximately ten feet ahead of Loyd. Hafstad accelerated and drove into the parking lot.

According to Indehar, after the two men began to run into the parking lot Loyd stopped and looked back towards the officers, at which point Indehar thought that Loyd was going to start shooting again. (Indehar Dep. at 41-42.) Indehar leaned out the passenger window and shot at Loyd while Hafstad continued to drive the vehicle into the parking lot. Indehar testified that he intended to shoot Loyd, not Moore, and that he never saw Moore holding a gun.[3] (Indehar Dep. at 42, 50.) It is undisputed, however, that

---

[3] Moore alleges that Indehar intended to shoot him, not Loyd. To support this allegation, he cites to a recommendation by Sergeant Charles Peter that Indehar receive a medal of honor, which states that Indehar shot at Moore, and a supplemental police report of Sergeant Peter that states Indehar shot at two people. (See Shulman Aff. Exs. C, N.) However, a party may not rely on hearsay evidence to oppose a summary judgment motion. Walker v. Wayne County, 850 F.2d 433, 434-35 (8th Cir. 1988). The court will not
(continued...)

3

Indehar shot Moore. According to Moore, after the squad car turned into the parking lot, he looked towards the vehicle, saw a red laser, turned to run and was immediately shot in the left arm. (Moore Dep. at 15, 27.) Moore heard multiple shots fired but does not know whether the shots were fired by one or multiple guns, where Loyd was at the time Moore was shot or whether Loyd fired at the squad car. (Id. at 24, 27.) Moore fled the scene, and a friend drove him to a nearby hospital. Following treatment, Moore was arrested at the hospital and charged with two counts of First Degree Assault, both of which were later dismissed.

On March 3, 2005, Moore brought this action pursuant to 42 U.S.C. § 1983 alleging a violation of his Fourth Amendment right to be free from excessive force. Indehar moves for summary judgment.

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is appropriate "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine

---

³(...continued)
stretch the presumption in plaintiff's favor "so far as to consider as evidence statements found only in inadmissible hearsay." Mays v. Rhodes, 255 F.3d 644, 648 (8th Cir. 2001). Viewing all the evidence that would be admissible at trial in the requisite light most favorable to plaintiff, the court finds that Moore has failed to create a genuine issue of fact as to who Indehar intended to shoot.

issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). A fact is material if its resolution would affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for either party. See id. at 252.

On a motion for summary judgment, all evidence and inferences are viewed in a light most favorable to the non-moving party. See id. at 255. The non-moving party, however, may not rest upon mere denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex, 477 U.S. at 324. If a plaintiff cannot support each essential element of a claim, summary judgment must be granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Id. at 322-23.

**II. Qualified Immunity**

Indehar moves for summary judgment on grounds of qualified immunity. Qualified immunity provides protection from civil liability to government agents who perform discretionary functions, so long as the challenged actions are objectively reasonable in light of clearly established legal principles. See Anderson v. Creighton, 483 U.S. 635, 638 (1987). Qualified immunity is a question of law that the court decides as early as possible to

shield appropriate officials from suit. See Gainor v. Rogers, 973 F.2d 1379, 1382-83 (8th Cir. 1992). The initial inquiry is whether the facts construed in a light most favorable to the injured party establish a violation of a constitutional right. Saucier v. Katz, 533 U.S. 194, 201 (2001); Craighead v. Lee, 399 F.3d 954, 961 (8th Cir. 2005). If they do not, no further inquiry is necessary. Saucier, 533 U.S. at 201. If they do, the court determines whether the right alleged to be violated was clearly established so that a reasonable officer would have known his conduct to be unlawful. Craighead, 399 F.3d at 961.

Because § 1983 is not a source of substantive rights but rather a "method for vindicating federal rights elsewhere conferred," the court's initial task is to identify which of Moore's constitutional rights has been allegedly infringed. Albright v. Oliver, 510 U.S. 266, 271 (1994). The parties dispute whether plaintiff's claim is properly analyzed as a violation of his Fourteenth Amendment right to substantive due process or his Fourth Amendment right to be free from excessive force. Indehar argues that because he did not intend to shoot Moore, Moore was an innocent bystander and any right violated must be one of substantive due process. See Neal v. St. Louis County Bd. of Police Comm'rs., 217 F.3d 955, 958 (8th Cir. 2000) (unintended shooting violates substantive due process if conduct is "conscience

6

shocking" and officer acted arbitrarily, "maliciously and sadistically for the very purpose of causing harm").

The Supreme Court has made explicit, however, that "all claims that law enforcement officers have used excessive force — deadly or not — in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." Graham v. Connor, 490 U.S. 386, 394-95 (1989); see also Craighead, 399 F.3d at 961 (analyzing § 1983 claim under Fourth Amendment when officer shot victim instead of suspect); Yang v. Murphy, 796 F. Supp. 1245, 1250 (D. Minn. 1992) (rejecting argument that § 1983 claim against officer who shot one suspect though intending to shoot another presents due process claim). Indehar's alleged use of excessive force occurred during a series of events that resulted in Moore's arrest. Therefore, the court rejects Indehar's argument and will analyze plaintiff's claim under the Fourth Amendment.

**A.   Fourth Amendment Claim**

An officer violates the Fourth Amendment when he uses excessive force to effect the apprehension or detention of a free citizen. Graham, 490 U.S. at 395; Craighead, 399 F.3d at 960. Indehar argues that no Fourth Amendment seizure occurred because he did not intend to shoot Moore and that, if a seizure did occur, the amount of force used under the circumstances was not excessive.

7

As to whether Indehar seized Moore, the Fourth Amendment prohibits unreasonable seizures but "is not a general prohibition of all conduct that may be deemed unreasonable, unjustified or outrageous." Medeiros v. O'Connell, 150 F.3d 164, 167 (2nd Cir. 1998). A Fourth Amendment seizure requires an "intentional acquisition of physical control." Brower v. County of Inyo, 489 U.S. 593, 596 (1989). Although a seizure occurs if an unintended person is the object of a detention or taking, the detention or taking of that person must be willful. Id. This principle of intent is "implicit in the word 'seizure,' which can hardly be applied to an unknowing act." Id. In other words, a seizure occurs "when the *pursued* citizen is physically touched by the police or when he submits to a show of authority." Cole v. Bone, 993 F.2d 1327, 1332 (8th Cir. 1993) (emphasis added) (citing California v. Hodari D., 499 U.S. 621 (1991)). Thus, the dispositive inquiry is not whether Indehar intended to discharge his weapon, the means of the seizure, but whether Indehar intended to seize Moore, the object of the seizure. See Medeiros, 150 F.3d at 167-68; Rucker v. Harford County, 946 F.2d 278, 281 (4th Cir. 1991); Ansley v. Heinrich, 925 F.2d 1339, 1344 (11th Cir. 1991); Landol-Rivera v. Cruz Cosme, 906 F.2d 791, 794-95 (1st Cir. 1990). Because Indehar did not intend to shoot Moore, Moore was not seized for purposes of the Fourth Amendment. Therefore, plaintiff has not established a violation of his Fourth Amendment rights.

Moreover, even if the shooting was a Fourth Amendment seizure because Indehar intentionally fired the weapon, the court finds that his use of deadly force under the circumstances was not excessive. Excessive force is that which is "excessive under objective standards of reasonableness." Saucier, 533 U.S. at 201-02. The use of deadly force is constitutionally reasonable to prevent escape if the officer has probable cause to believe that a suspect poses a threat of serious physical harm to the officer or others. Tennessee v. Garner, 471 U.S. 1, 11 (1985); Ludwig v. Anderson, 54 F.3d 465, 471 (8th Cir. 1995). "Thus, if the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given." Garner, 471 U.S. at 11-12.

When evaluating the amount of force used, the court pays particular attention to the facts and circumstances of the case, including the severity of the crime, whether the suspect posed an immediate threat to officer safety and whether the suspect was actively resisting or evading arrest. Graham, 490 U.S. at 396. The court does not judge the reasonableness of a particular use of force with the benefit of hindsight. Id. Rather, the court considers the "perspective of a reasonable officer on the scene" in light of the fact that officers "are often forced to make split-

9

second judgments — in circumstances that are tense, uncertain, and rapidly evolving — about the amount of force that is necessary in a particular situation." Id. at 396-97; see also Schulz v. Long, 44 F.3d 643, 648-49 (8th Cir. 1995) (court considers only information officer possessed when he decided to use deadly force).

Moore emphasizes that Indehar violated Minnesota law and police department regulations when he shot from a moving vehicle, without giving a warning and in the presence of bystanders.[4] Minnesota Statutes section 609.066 authorizes the use of deadly force when necessary to, among other things, protect an officer from apparent death or great bodily harm or effect the arrest or capture of a person reasonably believed to have committed a felony involving the use or threatened use of deadly force. See Minn. Stat. § 609.066 subd. 2 (1-3). Although state statutes and agency policies are relevant to the court's inquiry, an officer's violation of such provisions is not dispositive of the constitutionality of the challenged conduct because government

---

[4] The relevant police department policy provides:

> Firing a weapon at or from a moving vehicle is inherently dangerous to both the involved officer and innocent third parties. Therefore, officers should avoid firing weapons at or from a moving vehicle, except in circumstances permitting use of deadly force and after careful consideration of the possibility of collateral injury or death.

(See Shulman Aff. Ex. L.)

agencies can hold officials to standards higher than what the Constitution requires. See Cole, 993 F.2d at 1334. The court finds, however, that Indehar's conduct did not violate Minnesota law or the relevant police department policy. Indehar's use of force was statutorily justified because Loyd's firing of the weapon gave rise to a legitimate need to protect officer safety and his subsequent flight resulted in the officers' need to effect the arrest of an individual who had attempted to commit a felony involving deadly force. As to the fact that Indehar shot his weapon from a moving vehicle, the court finds that such conduct does not itself rise to the level of a constitutional violation. Moreover, the police department's policy permits firing a weapon from a moving vehicle if the circumstances permit the use of deadly force. (See Shulman Aff. Ex. L.)

In arguing that Indehar's use of force was objectively unreasonable under the Fourth Amendment, Moore submits the report of his expert, who opines that Indehar deviated from accepted police practice when he shot his weapon from a moving vehicle in dimly lit conditions with Moore and other bystanders in close proximity. (See Shulman Aff. Ex. M at 5.) Moore's expert places great emphasis on the fact that shooting from a moving vehicle is known to diminish an officer's accuracy. (Id.) In response, Indehar submits the report of his expert, who concludes that Indehar's actions were reasonable and that the use of deadly force

11

was justified because the officers faced an imminent deadly force situation that required split-second decision making as they drove into a gunfight and perceived Loyd to be firing at them.  (See Fundingsland June 8, 2006, Aff. Ex. G at 6-8.)

The court finds that Loyd not only threatened the officers' safety but directly endangered it.  Due to the rapid progression of events and the fact that the officers were fired at while in their squad car, an objectively reasonable officer could have deemed an advance warning to be unfeasible.  The officers had probable cause to believe that Loyd posed an immediate and serious, if not deadly, threat to the officers and bystanders because an objective officer on the scene could have believed that Loyd was an armed and dangerous suspect.  Further, it is undisputed that Loyd had begun to flee apprehension at the time Indehar shot his weapon.  Indehar fired at Loyd only after Loyd stopped to turn around and Indehar believed, based upon Loyd's actions, that he was going to begin shooting again.  Considering the totality of the circumstances, particularly Indehar's reasonable belief that he and Hafstad were being fired at, Indehar's use of deadly force did not violate the Fourth Amendment in light of the standards enunciated in Tennessee v. Garner, 471 U.S. 1 (1985).  Cf. Kruenger v. Fuhr, 991 F.2d 435, 438-40 (8th Cir. 1993).  Therefore, even if plaintiff was "seized," Indehar's use of force was not objectively unreasonable.

For these reasons, the court concludes that plaintiff has not alleged a violation of his Fourth Amendment right to be free from excessive force. Accordingly, summary judgment is warranted.

**B.   Clearly Established Right**

Moreover, even if Indehar's actions constituted a violation of Moore's Fourth Amendment right to be free from excessive force, the court cannot say that any such right was clearly established at the time of the shooting incident. A right is clearly established if its contours are "'sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" Wilson, 526 U.S. at 614-15 (quoting Anderson, 483 U.S. at 640). In other words, in light of pre-existing law, "the unlawfulness must be apparent." Anderson, 483 U.S. at 640. The dispositive inquiry is whether "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 201. The court applies the qualified immunity doctrine in a manner that "'gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.'" Walker v. City of Pine Bluff, 414 F.3d 989, 992 (8th Cir. 2005) (quoting Hunter v. Bryant, 502 U.S. 224, 229 (1991)). An objectively reasonable officer in Indehar's situation would not have known that using deadly force against Loyd under the

13

circumstances was unlawful.  Therefore, even if plaintiff's Fourth Amendment rights were violated, Indehar would be entitled to qualified immunity and summary judgment would be warranted.

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that defendant's motion for summary judgment [Docket No. 21] is granted.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  September 20, 2006

                                        s/David S. Doty
                                        David S. Doty, Judge
                                        United States District Court